**Stan WOLFLEY, Plaintiff and Counterclaim Defendant,**

v.

**UNITED STATES of America, Defendant and Counterclaim Plaintiff,**

v.

**Robert E. VAN LYDEGRAF, Gerald Callahan, et al., Counterclaim Defendants.**

**Civ. No. 89C–137A.**

United States District Court, D. Utah, C.D.

Dec. 4, 1990.

J. Jay Bullock, Bullock & Gardiner, Salt Lake City, Utah, for plaintiff and counterclaim defendant Wolfley.

Dee V. Benson, U.S. Attys. Office, Salt Lake City, Utah, Kirk C. Lusty, U.S. Dept. of Justice, Washington, D.C., for defendant and counterclaim plaintiff U.S.

George K. Fadel, Bountiful, Utah, for counterclaim defendant Callahan.

## ORDER DISMISSING THE COUNTERCLAIM OF THE UNITED STATES AGAINST THE COUNTERCLAIM DEFENDANT, GERALD CALLAHAN.

ALDON J. ANDERSON, District Judge.

This cause came on regularly for trial on Friday, November 16, 1990, before United States District Judge Aldon J. Anderson; the plaintiff appearing by Kirk C. Lusty, Trial Attorney, Tax Division, U.S. Department of Justice; and the defendant Gerald Callahan appearing in person and by his attorney, George K. Fadel; the causes against the other counterclaim defendants having been previously concluded, the Court received evidence presented by the parties on the issues raised between the United States and Gerald Callahan, and having heretofore made and entered (orally, on the record) Findings of Fact and Conclusions of Law, the Court renders herein its opinion and order.

The Court is persuaded that Gerald Callahan was not a person responsible for collecting, accounting for and paying over to the United States the taxes withheld from the wages of the employees of Energy Steel Corporation for the tax period ending June 30, 1982, nor did Callahan wilfully fail to collect or pay over to the United States the federal employment taxes withheld from Energy Steel Corporation employees' paychecks.

Callahan was asked by the Court about his prior education and his prior work experience. Both his prior education and work experience were limited to the extent he is not what could be called a professional who could move in and take over an operation of the kind involving Energy Steel and related companies in financial distress and to manage and take over all control and check the accounting. He was hired on April 1, 1982, and even if it were true that he was to manage and control the companies from that date, this assignment was beyond the capabilities and reasonable expectations of the performance of Callahan. From the Court's observation, Callahan was not a responsible party. He was not a stockholder, could not and did not hire or fire any employee, no employee reported to him or was supervised by him, he did not handle the day-to-day affairs of the company, made no tax returns, signed no tax returns, did not bill customers or order supplies. Callahan reported directly to Robert E. Van Lydegraf (Lydegraf) who was the owner of substantially all of the stock of Energy Steel and who received in conjunction with the factor, MBCH, all of the funds of Energy Steel. While Callahan was a director and an officer with a title, he was not given any duties or status which gave him control or right to control any money or finances of the company, and he was limited in the right to sign checks as one of two persons of five who had signature authority after approval of the check by Lydegraf and other associates of Lydegraf.

The United States examined Joseph Edmunds, a certified public accountant who testified that MBCH had asked him to go to Salt Lake City and see what could be done with Energy Steel and he prepared a financial analysis. Callahan was not asked to prepare any such financial analysis. Edmunds knew that Callahan was supposed to be in charge and both Edmunds and Callahan attended Board meetings in which delinquent taxes were discussed and in which Edmunds admonished the directors of the consequences of not paying the taxes. Edmunds prepared the quarterly tax returns which were shown to the directors, including Callahan, however Edmunds did not prepare checks in payment of taxes. Callahan and Edmunds both asked Lydegraf for funds with which to pay taxes and creditors, and Lydegraf stated verbally and by written management chart that Lydegraf would take care of paying the taxes and creditors and that Edmunds and Callahan should not concern themselves with such matters. This is a clear indication as to the authority and responsibility in this case for payment of taxes and creditors, being solely upon Lydegraf, the president, sole stockholder and controller of funds of Energy Steel, as between Callahan and/or Edmunds. There is no question that Mr. Callahan was not the one who could say whether payments were to be made or not. As testified by Mr. Wolfley, Callahan was essentially hire to solicit business for the fabrication plant and to sell stock, and this was Callahan's primary responsibility according to Wolfley.

Wolfley also testified that Callahan had the position of vice-president, was on the board of directors, attended board meetings with Wolfley and three other directors and that they discussed back taxes. He stated that any two of five persons could sign checks. Wolfley signed some checks for shop operations and for steel, but he was on the road selling often and two others would have to sign checks. Wolfley testified that Callahan was one of five persons who could sign checks prepared by others, however he said that Lydegraf was the person responsible to pay taxes and to provide funds controlled by Lydegraf and

MBCH. Wolfley also said that he and personnel at Energy Steel knew what the company's receivables were, but that they did not know what money was being paid in by customers because the invoices were pre-stamped indicating payment directly to MBCH. They, at Energy Steel, did not know what money was available for debts, nor did they have authority to pay any bills without having Lydegraf pass on it. Wolfley said that he understood that Callahan was to be in charge of everything, but Callahan did not actually hire or fire or do anything other than solicit work and attempt to sell stock, and request money to pay taxes. Lydegraf would say whether or not taxes and bills were to be paid, and any check of a significant amount had to be countersigned and/or approved by Lydegraf and MBCH in Ogden, Utah.

Without question, Callahan was there on short notice and there was already an accumulation of taxes due. He was not an accountant able to handle the matters of tax returns and office problems. He was given the titles to induce him to come to work for Lydegraf's companies, and it is evident that Lydegraf primarily hoped that Callahan could do what he testified his charge was to do, to come up with $500,-000.00 equity money. From what the Court has heard and observed about Callahan's background, there is no evidence from which to establish any reasonable belief that he could raise such capital. It was just that Lydegraf and MBCH were hard up for help.

The Court does not have any problem with this case at all, and it is one of the few cases wherein the facts are such that the Court can conclude that Callahan was neither a responsible person, nor did he wilfully fail to collect and pay over to the United States the payroll taxes others collected from employees of Energy Steel Corporation, although the many cases cited by the United States do give the government many advantages that the tax collector necessarily must have as the law has determined. The United States in this case has relied upon the mountain peaks that the law has established to give it a strong basis

for seeking recovery as far into the organization as may be established that the person have significant authority. Although it doesn't have to be exclusive, it must be significant authority to handle the money and to make the payment on the taxes. I do not believe there is any evidence that Callahan had that kind of authority, which could be considered as credible evidence thereof.

NOW THEREFORE, IT IS HEREBY ORDERED that the counterclaim of the United States be, and the same is hereby dismissed with prejudice.